Commonwealth, Appellant, *v.* Zommick.

Argued April 11, 1949. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*Elgin E. Weest,* with him *T. McKeen Chidsey,* Attorney General, for appellant.

*Joseph E. Pappano,* for appellee.

OPINION BY MR. JUSTICE JONES, May 23, 1949:

The question raised on this appeal is whether the liability imposed by Section 3 of the Act of 1915 [1] upon

---

[1] Act of June 1, 1915, P. L. 661, Sec. 3, as amended by the Act of May 10, 1921, P. L. 438, Sec. 2, 71 PS §1783.

the persons therein designated for the maintenance of an inmate of a State institution is primary or secondary, the patient's own common law liability in such regard is declared and continued by Section 1 of the Act.

In this suit, brought by the Commonwealth against a father to recover for his son's maintenance in a State institution, the trial court ruled that, under the evidence in the case, it was incumbent upon the Commonwealth to establish the continuing indigency of the son (no longer committed) before it could recover therefor from the father on his statutory liability. The undisputed facts show the following situation.

On four separate occasions between the years 1924 and 1942, the defendant's son was committed to the Norristown State Hospital as an indigent and insane patient, the father signing the commitment papers each time save for the last when the commitment was ordered by the Quarter Sessions Court of Delaware County where the son had appeared as the result of an arrest. The periods of confinement varied from three to six months, the last commitment ending with the patient's discharge from the hospital on May 31, 1942. At the time of the first commitment, viz., on July 4, 1924, the son was nineteen years old and, at the time of the institution of this suit against the father, was forty-two. According to the father's testimony at trial, the son had been gainfully employed as a carpenter for several years following his last discharge from the State hospital, but such employment had terminated about three years before the trial. The Commonwealth's claim was not disputed and the father's ability to pay was admitted. At the conclusion of the trial, the plaintiff moved for a directed verdict. The motion was refused and the case was submitted to the jury which returned a verdict for the defendant. From the judgment entered thereon, the Commonwealth appealed.

The ruling of the learned trial judge was error. The defendant's liability was clearly established by the undisputed evidence; and the defense interposed was irrelevant and immaterial to the issue. Section 3 of the Act of 1915 provides that "The husband, wife, father, mother, child, or children of any person who is an inmate of any asylum, hospital, home, or other institution, maintained in whole or in part by the Commonwealth of Pennsylvania, and who is legally able so to do, shall be liable to pay for the maintenance of any such person . . .". The liability so imposed is direct and wholly independent of the inmate's common law liability which Section 1 of the Act declares and continues. The provision of Section 3 was for the protection of the Commonwealth (*Harnish's Estate*, 268 Pa. 128, 131, 110 A. 761) and imposed "a new liability on others for the same debt" for which the inmate himself is liable, "the legislative intention [being] to provide an additional source of payment in the nature of a suretyship": *Boles's Estate*, 316 Pa. 179, 182, 173 A. 664. The analogy to suretyship, of course, connotes that, as to the Commonwealth, the liability of the persons specified in Section 3 is primary. Its enforcement in no wise depends upon the Commonwealth's establishing antecedently that the recipient of the hospital service continues to be indigent. Indeed, the patient's financial position is of no materiality to the enforcement of the liability created by Section 3. Consequently, we pass by, as being presently superfluous, any inference, adverse to the father's contention, to be drawn from his earlier certifications of his son's indigency as well as the insufficiency of the testimony which he offered in an ostensible effort to establish the son's financial ability to pay. What may be the order of liability for such maintenance *inter partes*, i.e., as between the patient and the persons made liable by Section 3, is a question with which this case is not concerned.

By the terms of Section 3, the only condition to the enforcement of the liability thereby imposed is that the person sought to be charged therewith is "legally able" to pay for the patient's maintenance: see *Harnish's Estate,* supra. Here, the father's identity and his ability to pay were admitted. The amount of the claim being undisputed, the plaintiff was entitled to judgment forthwith.

The judgment for defendant is reversed with directions that judgment for the plaintiff be entered for the amount of the claim.