## Commonwealth v. Weber

*Wisler, Pearlstine, Talone & Gerber,* for Commonwealth.

*Rutter, O'Donnell & Mauger,* for defendant.

KNIGHT, P. J., May 5, 1950.—This case arises under the provisions of the Act of June 1, 1915, P. L. 661, 71 PS §1781, et seq., and its supplements and amendments.

The facts are set forth in the stipulation filed by counsel, and are as follows:

1. Frank Weber, Jr., and Lois M. Weber are husband and wife, and were husband and wife at all times mentioned in this stipulation.

2. Lois M. Weber was a patient in the Norristown State Hospital on October 17, 1932, and at that time was the wife of Frank Weber, Jr.

3. Subsequently, Lois M. Weber was released, on December 31, 1932.

4. On September 18, 1940, Lois M. Weber again became a patient at the Norristown State Hospital.

5. On September 26, 1947, as of September term, 1947, no. 9, Harold G. Knight, president judge, placed an order on Frank Weber, Jr., to pay the sum of $30 per month for the maintenance and support of his wife, Lois M. Weber, at the Norristown State Hospital, where she was a patient at the time of the order. The order entered was as follows:

"And now, September 26, 1947, after hearing held in open court, it is hereby ordered and decreed that Frank Weber, Jr., pay to the Commonwealth of Pennsylvania, Department of Revenue, the sum of $30 each month on account of the maintenance and support of his wife, Lois M. Weber, at the Norristown State Hospital.

"The first payment shall be made on October 1, 1947, and subsequent payments in the amount of $30 shall be made on the first day of each month thereafter until the further order of this court."

6. Subsequently thereto, in February of 1948, contempt proceedings were filed against Frank Weber, Jr., by reason of the fact that he had paid only $30 from the date of the order. On February 24, 1948, the sum of $120 was paid and monthly payments of $30 were made thereafter until November 27, 1948, when a final payment of $10.62 was made.

7. On September 8, 1948, Lois M. Weber was released from the Norristown State Hospital and has not been a patient since that time.

8. Attached hereto, made a part hereof, and marked exhibit B, is a detailed statement of the charges and credits for the periods of the confinement of Lois M. Weber at the Norristown State Hospital.

9. The attached statement referred to in the previous paragraph shows that from the date of the court order on September 26, 1947, to September 8, 1948, when Lois M. Weber was released from the hospital, the amount of $370.62 became due under such order.

10. Frank Weber, Jr. paid the sum of $360 between the period of September 26, 1947, and September 8, 1948, and paid, in addition thereto, the sum of $30 on September 20, 1948, and the further sum of $30 on November 1, 1948, and the further sum of $10.62 on November 27, 1948.

11. Frank Weber, Jr. has, therefore, paid the amount equal to the court order during the period, September 26, 1947, to September 8, 1948, and also, such statement shows that he has paid $70.62 after the date of the release of his wife, Lois M. Weber, on September 8, 1948.

12. The attached statement heretofore referred to shows that at the present time there are unpaid charges of $1,731.15 for the maintenance of Lois M. Weber, said statement including all visits, charges, and credits.

13. The full per capita maintenance charges for Lois Weber at the Norristown State Hospital for the month of October 1947 was the amount of $40.70, and for the month of November 1947 was $40.43, and for the month of December 1947 was the amount of $42.46, or a total of $123.59.

Under the above statement of facts, the following questions are raised: (1) May the Commonwealth collect, by virtue of the order of the court dated September 26, 1947, the arrearages accrued before that date?; (2) Does the above order remain in force until revoked, or otherwise declared void, by action of the court?; (3) Under the above order, may the Commonwealth collect the actual cost of maintaining the incompetent in the State hospital, over and above the sum of $30 per month, which defendant was directed in the order to pay?

Taking up these questions in their reverse order, an examination of the Act of June 1, 1915, supra, discloses that, before liability may be imposed upon a relative of the incompetent, it must be shown that such relative is legally able to pay. The court, in making an order on a relative of the incompetent, must take into consideration the relative's ability to pay, and make such order as is fair and just under the circumstances.

It is to be presumed that the court, in making the order of September 26, 1947, took into consideration defendant's ability to pay and fixed the amount of the order at $30 per month. If the Commonwealth thought that defendant should pay the full cost of maintenance, it was its duty to seek an amendment to the order, and show the ability of defendant to pay more than $30 per month. We hold then that defendant was not required to pay more than $30 per month from the date of the order until his wife left the hospital.

In considering the second question, it is obvious that the order of September 26, 1947, is still technically in effect, for by its terms it was to remain in effect "until the further order of this court", and no such order has ever been entered. The wife of defendant left the State hospital on September 8, 1948, and has not since returned. Unless it is held that the order of September 26, 1947, applies to arrearages accrued before that date, it would be manifestly unjust to require this defendant to pay for maintenance which his wife never received. Defendant has paid $30 per month for the maintenance of his wife at the hospital, from September 26, 1947, until she left the hospital on September 8, 1948, and has paid $70.62 since she left the hospital. Defendant is not entitled to have this $70.62 returned to him. He owes considerable money to the Commonwealth, and the $70.62 should be credited on his debt.

We now come to the first, and perhaps most important question, namely, whether the arrearages for maintenance, which accrued prior to September 26, 1947, may be collected by virtue of the order entered on that date.

The original petition in this case, on which the order of September 26, 1947, was made, was filed under the provisions of section 4 of the Act of June 1, 1915, supra, which provides that the court of common pleas of the

county of the residence of the inmate, may make an order for the maintenance of said inmate, upon, inter alia, the husband of the inmate, taking into consideration the husband's ability to pay. It is well established that, in cases involving support in the quarter sessions court, orders can only be made for future support and maintenance, and not for past support: In Re Proceedings Against Forcey, 99 Pa. Superior Ct. 293, 295 (1930) ; In the Matter of Lucy Jones, 96 Pa. Superior Ct. 480, 487 (1929) ; Keller v. Com., 71 Pa. 413 (1872).

We recognize that we are here dealing with the Act, of June 1, 1915, supra, which applies to indigent insane inmates of hospitals maintained in whole, or in part, by the Commonwealth, but, in construing this act, we must not overlook the long established rule of the quarter sessions, that support orders are only prospective, and it is reasonable to believe that the legislature did not intend that a departure should be made from this well-established rule by the Act of 1915.

It has been held that a designated relative, under section 3 of the Act of June 1, 1915, supra, is liable to the Commonwealth for past support of an insane inmate in a State hospital (Harnish's Estate, 268 Pa. 128 (1920)), and some courts have held that this liability could be enforced by an order obtained under section 4 of the act. It was so held by Judge Henninger of Lehigh County, in In re Wittwer, 31 D. & C. 102 (1937), but in a later case, Com. v. Groller, 41 D. & C. 366 (1941), this same judge had this to say, on page 368:

"There is no doubt that, so far as future maintenance is concerned, an order can be made only upon strict compliance with section 4, 71 PS §1784, and that, in proceedings *under that section, no order may be made for past maintenance.*" (Italics supplied.)

In Com. v. Stecula, 33 Del. Co. 568 (1945), a suit was brought in assumpsit, and a motion made for judgment for the Commonwealth on the pleadings. In overruling the motion, Judge Sweney said (at page 571):

"It is not our desire to be technical; but, we feel that this case would be better handled if a petition had been presented asking the court to determine the financial ability of this defendant to pay and to fix an order. However, we are of the opinion that the same result may be reached by a trial. . . ."

That a suit in assumpsit is the proper remedy for the recovery of past maintenance, under the Act of 1915, is implied by the latest pronouncement of our appellate courts: Com. v. Zommick, 362 Pa. 299 (1949).

We are of the opinion that section 4 of the Act of June 1, 1915, supra, and the procedure therein described, applies only to future maintenance and cannot be made to cover past maintenance. An order made under section 4 of the act can be enforced by attachment of the person, and we do not think the legislature intended that this drastic remedy should be used for the collection of a debt, even a debt due the Commonwealth. An examination of the order made in this case shows that it was prospective and not retrospective. No mention is made in the order, or the proceeding, of the past maintenance.

Since defendant has fully complied with the order, it follows that the rule to show cause why an attachment should not issue, must be discharged. The Commonwealth still has its action in assumpsit against defendant.

And now, May 5, 1950, the rule to show cause why an attachment should not issue is discharged.