## Scheirer Estate

*John F. Stine, Jr.,* for accountant.

*M. Jack Morgan,* for Commonwealth.

GEARHART, P. J., June 21, 1950.—This is the audit of the first and final account of George W. Palmer,

executor under the last will and testament of Elmer W. Scheirer, deceased.

Elmer W. Scheirer died on August 12, 1949. His will, dated June 30, 1947, was duly probated. There is a balance for distribution of $1,330.13.

The Commonwealth has presented its claim in the amount of $1,041.43 for the maintenance of decedent's son, Floyd Scheirer, at the Allentown State Hospital from October 1, 1947, to August 12, 1949, the date of decedent's death. The facts are not in dispute.

Floyd Scheirer is an adult, 36 years of age, who was committed to the Allentown State Hospital on February 13, 1940, as an indigent insane person. Decedent paid for his son's maintenance at the hospital from the time of his commitment to September 30, 1947. On May 30, 1948, the mother of Floyd Scheirer died intestate. The son's share in his mother's estate amounts to $1,523.99, which is presently in the hands of his guardian, the Liberty Bank and Trust Company, appointed by the Court of Common Pleas of Lehigh County.

It is the contention of the estate that in view of the fact that the incompetent, Floyd Scheirer, has personal property valued at $1,523.99, his estate should be required to pay this bill.

The Commonwealth claims under the Act of June 1, 1915, P. L. 661, secs. 1 and 3. At common law, a lunatic was liable in quasi-contracts for support, and section 1 of the act continues this liability. Section 3 imposes on others, including the father, an additional responsibility for maintenance of the incompetent, if "legally able so to do". By section 3 the legislature intended to provide an additional source of payment in the nature of a suretyship: Boles' Estate, 316 Pa. 179, 182.

In Commonwealth v. Zommick, 362 Pa. 299, 301, Mr. Justice Jones, writing the opinion of the Supreme

Court and referring to Boles' Estate, where it was stated that the additional source of payment was in the nature of a suretyship, said:

"The analogy to suretyship, of course, connotes that, as to the Commonwealth, the liability of the persons specified in Section 3 is primary. Its enforcement in no wise depends upon the Commonwealth's establishing antecedently that the recipient of the hospital service continues to be indigent. Indeed, the patient's financial position is of no materiality to the enforcement of the liability created by Section 3. Consequently, we pass by, as being presently superfluous, any inference, adverse to the father's contention, to be drawn from his earlier certifications of his son's indigency, as well as the insufficiency of the testimony which he offered in an ostensible effort to establish the son's financial ability to pay. What may be the order of liability for such maintenance inter partes, i. e., as between the patient and the persons made liable by Section 3, is a question with which this case is not concerned."

Counsel for the estate argues that since the estate of the lunatic would eventually be liable over to the estate of Elmer Scheirer, this court should refuse to honor the claim and direct the Department of Revenue to proceed against the incompetent's personal estate, and points to Boles' Estate as authority for that proposition. However, Boles' Estate is not apposite here for the reason that in that estate the orphans' court had jurisdiction of the fund as well as of all the parties interested, and accordingly had the power by subrogation to decree reimbursement to the father's estate out of the son's interest in the estate. In the instant case, the incompetent's estate is not within the jurisdiction of this court. The court of common pleas has jurisdiction of the incompetent's funds. It follows that in this forum we cannot enforce subrogation. Accordingly, the claim of the Commonwealth is allowed, without

prejudice to the estate to proceed in the proper forum to recover the amount paid in behalf of the incompetent.