## In re Youngblood

*Sidney Chait* and *David D. Goff*, for Commonwealth.
*Stuart L. Kirk*, for guardian of Stella Youngblood.
*LeRoy Humbert*, for Edward Youngblood.

CRUMLISH, J., June 27, 1951.—This matter is here on a petition by the Commonwealth of Pennsylvania for a rule on the guardian to show cause why he should not pay past and future maintenance charges of the ward and her daughter.

Stella Youngblood was committed to the Philadelphia State Hospital on September 24, 1946. She is 51 years old. Her son died on December 2, 1947, and the proceeds ($10,000) of his Veterans Administration insurance policy went to her. On January 30, 1950, a guardian was appointed by the court for Stella Youngblood. Up until the present the guardian has spent $586.75. He has invested $4,000 in the Second Federal Savings and Loan Association of Philadelphia. The balance ($5,872.55) is in an account in the Market Street National Bank, Philadelphia, Pa.

Gladys Youngblood, 27, also a mental defective, was committed to the Philadelphia State Hospital on July 3, 1945. She is the daughter of Stella Youngblood.

Edward Youngblood, husband of Stella Youngblood and father of Gladys Youngblood, lives at 1215 Poplar Street, Philadelphia, Pa., where he conducts a tailoring business. He owns the property in which he lives mortgage free, and he testified that it has a value of about $4,000 (it is assessed at $2,500). Title is held jointly with his wife, Stella Youngblood. Besides Gladys, he has four other children, three of whom live at home. Two daughters, age 29 and 23, contribute, between them, $11 a week to their father. The other child at home, a 16-year-old son, is a mental defective who requires medical attention for which his father pays $9 a week. The net income from his tailoring business is $30 a week.

Up until January 31, 1951, the accrued cost of the maintenance of Stella Youngblood at the Philadelphia State Hospital was $2,043.50. The cost of maintaining Gladys up until that time was $2,811.30. Defendant, Edward Youngblood, has been paying, voluntarily, $8 a month toward the maintenance of Gladys and up until the time of the filing of this petition has paid $528. Thus the balance due for the maintenance of Gladys Youngblood on January 31, 1951, was $2,-283.30. The cost of maintaining each of the inmates is presently approaching $60 a month.

The foregoing facts appeared in the pleadings filed and at the argument in the above matter as follows:

March 6, 1951, the Commonwealth of Pennsylvania filed a petition and rule to show cause why the guardian of Stella Youngblood should not pay to the Commonwealth of Pennsylvania the sums due for the past maintenance of Stella Youngblood and her daughter, Gladys Youngblood, and for the future maintenance of each until further order of the court.

April 3, 1951, the guardian filed an answer to the Commonwealth's petition denying the Commonwealth's right to the order sought. On the same day the guardian filed an order secured on Edward Youngblood for a rule to show cause why he should not be made a party to the action: In re Hannon, 52 D. & C. 160 (1944).

Edward Youngblood filed an answer alleging that he was unable to pay any amount to the Commonwealth for the support of his wife, Stella Youngblood, and any additional amount for the support of his daughter, Gladys, and he asked that the guardian of the estate of Stella Youngblood be required to pay her maintenance due the Commonwealth out of the funds in his hands.

The question has been raised whether the procedure, a petition and rule to show cause, is proper where the

collection of past and future maintenance for both the inmates is sought by the Commonwealth.

Section 4 of the Act of June 1, 1915, P. L. 661, as amended, 71 PS §1784, provides:

"The court of common pleas of the county of the residence of any inmate of a State-owned mental hospital . . . wherein said inmate is maintained in part by the Commonwealth of Pennsylvania, shall, upon the application of the Department of Justice, acting on behalf of the Department of Revenue, make an order for the payment of maintenance to the Commonwealth, upon the trustee, committee, guardian, or other person who has charge of the estate of any such inmate, or against the husband, wife, father, mother, child, or children of any person so maintained . . ."

In Cronin's Case, 326 Pa. 343 (1937), the Commonwealth filed a petition pursuant to the Act of June 1, 1915, supra. The prayer was for the payment of past and future maintenance of the ward out of funds in the hands of the trustee of her estate. The Supreme Court affirmed the lower court insofar as it ordered the trustee to pay for both past and future maintenance in answer to the petition.

In Commonwealth v. Zommick, 362 Pa. 299 (1949), the action was in assumpsit against a living relative for the past maintenance of an indigent insane person. On appeal to the Supreme Court there was no question as to the propriety of the action's being brought in assumpsit.

The lower courts seem agreed that an action for *past* maintenance against living relatives of an indigent insane person should be in assumpsit: Commonwealth v. Groller, 41 D. & C. 366 (1941), (in this case the authorities cited to support the proposition at page 368 are all concerned with support orders under the Act of 1867; none of them are brought under the Act of 1915, here involved); Commonwealth v. Aquilino,

64 D. & C. 215 (1948), (in which the Groller case is quoted and relied on at pages 217 and 218) ; Commonwealth v. Schmidt et ux., 70 D. & C. 335 (1949), (where Commonwealth v. Groller is again relied on at page 338 and reliance is put on In re Stoner's Estate, 358 Pa. 252, 257, but that case merely quotes Harnish's Estate, infra, which held that the Act of 1915's procedure is not *exclusive*). In Commonwealth v. Weber, 71 D. & C. 546 (1950), where it was held that section 4 of the Act of 1915 and the procedure therein described applied only to future maintenance, it was said:

". . . we must not overlook the long established rule of the quarter sessions, that support orders are only prospective, and it is reasonable to believe that the legislature did not intend that a departure should be made from this well-established rule by the Act of 1915."

The quoted analogy fails in the instant case, for the Act of 1915 refers only to the payment of maintenance of indigent inmates of State-owned institutions and is intended for the protection of the Commonwealth in a specific instance where payment is sought for institutional expenses. Quarter sessions support liability, on the other hand, is not determinable until the court sets the amount; hence the orders are of necessity prospective. The 1915 Act provides in section 5 for the method of proving the amount due for maintenance. Section 4 outlines the procedure for collecting, by the Commonwealth, of that amount. (But the procedure is not exclusive: Harnish Estate, 268 Pa. 128 (1920).) There is no indication in the act of an intention to limit the procedure to the collection of future maintenance; rather, section 8 of the Act of 1915, supra, which makes the act applicable to maintenance claims due the Commonwealth at the time of its passage would seem to indicate that whether the

maintenance claimed is past or future, the procedure may be followed.

Aside from the precedents set in the foregoing authorities, we are of the opinion that the proceeding adopted in the instant case is proper. Here the guardian is within the jurisdiction of the court and the claims presented to him are undisputed in amounts. Exercising our duty to preserve the ward's estate, we can serve no useful purpose by requiring the Commonwealth to reduce its claims to judgment before determining whether or not the invested fund in the hands of the guardian is liable therefor.

We come now to the main question: To what extent is the sum in the hands of the guardian of Stella Youngblood's estate liable for the Commonwealth's claims for maintenance, both for the ward and her daughter?

Without asking any more than he is presently paying from the husband, Edward Youngblood, the Commonwealth has proceeded against the estate for the maintenance of both the ward and her daughter. As to the incompetent ward, the liability of her estate for her own maintenance, both past and future, is absolute:

"Whenever any person is maintained as an inmate of any hospital, home, sanatorium, or other institution of the Commonwealth, in whole or in part at the expense of the Commonwealth, the property or estate of such person shall be liable for such maintenance, to be paid or recovered as hereinafter provided": Act of June 1, 1915, P. L. 661, sec. 1, 71 PS §1781. See In re Riale, 53 D. & C. 361, 363 (1945).

The daughter of the ward has no estate from which payment can be made. Therefore section 3 of the Act of June 1, 1915, supra, puts the burden on "husband, wife, father, mother, child, or children . . ." The order of the relatives named in the statute does not

control the order which the Commonwealth must follow in enforcing maintenance claims: Commonwealth v. Schmidt et ux., 70 D. & C. 335, 339 (1949). The choice between husband and wife here requires only the consideration of relative ability to pay. The statute (section 3) requires the relative to pay only where he is "legally able so to do". See Commonwealth v. Zommick, supra, at pages 301, 302.

The husband, Edward Youngblood, according to the figures referred to above, has, after paying the medical expenses for his son and the maintenance payments of $8 monthly for his daughter, about $130 a month with which to run his household, consisting of himself and three children, two of whom are adults. His only property, a business-home establishment, assessed at $2,500, is held jointly with his wife. His responsibility for the care of his younger mentally defective son at home will continue.

On the other hand, the estate has available $4,000 invested in Second Federal Savings and Loan Association of Philadelphia which may be used to pay the creditors of the incompetent, Stella Youngblood. See section 3 of the Act of August 12, 1935, c. 510, 49 Stat. at L. 609; Oct. 17, 1940, c. 893, sec. 5, 54 Stat. at L. 1195; 38 U. S. C. §454a; Carrier et al. v. Bryant, 306 U. S. 545 (1939).

Up until the time of the appointment of the guardian on January 30, 1950, the accrued maintenance for the ward, Stella Youngblood, was $1,411.04, and the accrued maintenance for the ward's daughter up until that time was $1,650.84 (this latter figure is shown as reduced by the voluntary payments of Edward Youngblood). The total of $3,061.88 for accrued maintenance for both the ward and her daughter will be paid out of the $4,000 invested by the guardian in the savings and loan association.

Since the appointment of the guardian there has become due an additional $632.46 for the maintenance of the ward Stella Youngblood up until January 31, 1951. This amount, too, will come out of the $4,000 invested fund of the estate.

The Commonwealth asks that the ward's daughter's maintenance accrued after the appointment of the guardian until January 31, 1951, $632.46, also be paid out of the fund invested. This latter amount cannot be paid in full, for after paying the accrued maintenance for both the ward and her daughter until January 30, 1950, plus the maintenance for the ward until January 31, 1951, there remains only $305.66 of the $4,000 invested, plus any accrual thereon. This balance will be used to pay on account of the $632.46 which the Commonwealth asks for the ward's daughter for maintenance between January 30, 1950, and January 31, 1951. We consider it equitable to take the ward's maintenance first out of the fund and leave the unpaid balance on the daughter's account. To reverse the order of payment would be penalizing the estate for the guardian's prudent investment.

After the above payments are made the invested fund will have been depleted. The uninvested portion remaining can be used for payment of the present and future maintenance of the ward only: Brusbard's Estate, 34 D. & C. 107 (1938).

The foregoing solution seems most equitable, for the estate of the incompetent bears only the expenses of her own needs and of administration.

### Order

And now, June 27, 1951, it is ordered:

1. That the guardian of the estate of Stella Youngblood pay out of the $4,000 invested in the Second Federal Savings and Loan Association of Philadelphia to the Commonwealth of Pennsylvania the following sums:

For the maintenance of Stella Youngblood to January 31, 1951 ............................. $2,043.50

For the maintenance of Gladys Youngblood to January 31, 1951 ......................... $1,956.50
(plus any accrual on the $4,000 investment)

2. That the guardian of the estate of Stella Youngblood henceforth pay the monthly charges for the maintenance of Stella Youngblood from February 1, 1951, as they become payable so long as: (1) Stella Youngblood remains an inmate of the Philadelphia State Hospital, and (2) the estate is sufficient to comply therewith, due regard for the expenses of administration and other legal charges being made.