## Barna Estate

*Aubrey R. Newlin, Jr.,* for accountant.

*Joseph Lurie, Isadore A. Shrager* and *Hugh P. Connolly,* for Commonwealth.

SHOYER, J., December 4, 1961.—Mary Barna died November 21, 1958, intestate, not survived by a spouse, and leaving, as appears from the statement of proposed distribution, as the persons entitled to her estate under the intestate laws, four sons, Andrew Barna, Alexander Barna, John Barna and Nicholas Barna, and four daughters, Mary Lane, Anna Goane, Julia Grayo and Helen Shubin, all of whom are noted as being living and of age. . . .

The only question requiring adjudication arises out of the Commonwealth's claim in the sum of $5,465.21 for reimbursement for the support and maintenance of Julia Grayo at Norristown State Hospital from April 25, 1950, to August 12, 1956. The claim, supported by a statement under the seal of the Commonwealth, certified by the revenue agent as being correct, was admitted in evidence. Such statement is prima facie evidence of the amount expended by the Commonwealth for the support and maintenance of a patient in any proceeding brought to recover the amount of such maintenance: Giordano Estate, 14 D. & C. 2d 725, 726 (1958), citing Frey's Estate, 342 Pa. 351, 355 (1941) ; Harnish's Estate, 268 Pa. 128 (1920). The claim was further supported by the testimony of James R. Bivens, an investigator of the Commonwealth's Department of Revenue (N. T. pp. 9-16).

Decedent's next of kin oppose payment of the claim solely on the ground that the Commonwealth should *first* exhaust its efforts for collection against the incompetent's husband, George Anthony Grayo.

The testimony of the State investigator and of Andrew Barna, John Barna and Anna Goane, the latter three being children of decedent, establishes

that, although George Grayo is under order of the Philadelphia County Court for support of his wife, he has been missing and unheard from for the past seven years.

The Mental Health Act of June 12, 1951, P. L. 533, as amended, sec. 701, 50 PS §1361, provides:

"Except as otherwise specifically provided in this act, liability for all costs of care of any patient in any State institution is hereby imposed, in the following order, against—

"(1) The patient's real and personal property;

"(2) The persons liable for the patient's support; *

"(3) The Commonwealth or, in the case of an inebriate, the county or institution district in which he resides."

The statutory order of *liability* for costs is here academic insofar as the Commonwealth is concerned. Since the Commonwealth is last in the order, and has already provided for the care and maintenance of the incompetent, all persons and estates liable for her support are answerable to it, and it is not bound by any rules of priorities as between the parties. The obligation of the patient's relations under the Mental Health Act of June 12, 1951, as amended, as well as under the Act of June 1, 1915, as amended, is a *primary* obligation in the nature of a *suretyship:* Commonwealth v. Zommick, 362 Pa. 299 (1949) ; Liberty Bank & Tr. Co. v. Commonwealth, 85 D. & C. 279 (1952) ; McIlwain's Estate, 4 Fiduc. Rep. 200 (1954).

The liability imposed on the parents of an incompetent by the Mental Health Act of 1951, and by the Act of June 1, 1915, as amended, has been held to extend to the parent of an incompetent adult child: Boles' Estate, 316 Pa. 179 (1934) ; Giordano Estate, supra.

---

* Act of June 1, 1915, P. L. 661, sec. 3, as amended, 71 PS §1783.

The Mental Health Act applies solely to patients in State institutions. It was not intended by that act to change or eliminate the common-law liability of a husband for the support of his wife: Liberty Bank & Tr. Co. v. Commonwealth, supra, at 285. See also Waesch's Estate, 166 Pa. 204, 205 (1895); Commonwealth ex rel. Shotz v. Shotz, 130 Pa. Superior Ct. 561, 564 (1938); In re Hannon, 52 D. & C. 160; Shaffer Estate, 68 D. & C. 351, 356 (1949); Loeffler Estate No. 2, 74 D. & C. 205, 210 (1951).

So that, while the liability of a husband for the support of his wife, whether she be sane or insane, or in a State institution, remains primary and absolute, the Commonwealth is not bound by any order or subordination in liability, but may compel the parties to work out their own equities: Liberty Bank & Tr. Co. v. Commonwealth, supra, at 286.

In view of the foregoing, the patient's distributive share in her deceased mother's estate being less than the Commonwealth's claim, her share will be applied on account thereof, and the balance of the claim will be awarded out of the parent's general estate: Boles Estate, supra. See also Estate of Julia Weil, deceased, Phila. O. C., no. 1228 of 1954 (unreported), and Estate of Charles Weil, an incompetent, no. 2165 of 1954 (unreported). Decedent's other children, whose shares are thereby reduced, will be subrogated to that extent as to their rights over against their sister and her missing husband.

The claim of the Commonwealth is, therefore, allowed, as above. . . .

And now, December 4, 1961, the account is confirmed nisi.