## Rhoads Estate

*Ernest E. Heim,* for accountant.
*Edward J. Ozorowski,* for Commonwealth.

TAXIS, J., March 22, 1963.—The Commonwealth of Pennsylvania, Department of Public Welfare, has filed a claim in the amount of $9,956.83, representing care and maintenance supplied to Ronald Rhoads, son of the decedent, from February 20, 1954, to the date of death of decedent, October 16, 1961. Proof of the claim was submitted at a hearing held on October 9, 1962, and the amount thereof is not in issue.

The claim is opposed by the residuary legatees, however, on the ground that Ronald Rhoads has a wife, age 46, gainfully employed. The legatees contend that in these circumstances, it would be improper and inequitable to order payment of the Commonwealth's claim from this estate without first imposing upon it the duty to attempt to obtain some contribution from the wife and sons. They point out that they are the sister, brother and niece, respectively, of Ronald Rhoads, and as such are not responsible for his support, although the allowance of this claim would in effect make them so. They further contend in the alternative that even if the claim be not totally disallowed, it should be reduced by a court of equity to such amount as is clearly not secured by the resources of the incompetent's family.

The Mental Health Act of June 12, 1951, P. L. 533, as amended, is the governing statute here. Section 701 thereof (50 PS §1861) imposes:

". . . liability for all costs of care of any patient in any institution is hereby imposed in the following order, against— (1) the patient's real and personal property; (2) the persons liable for the patient's support; (3) the Commonwealth . . ."

On its plain language, this statute creates liability only, and contains nothing by statement or inference which would compel the Commonwealth, whose liability for the support of a patient is last, to proceed seriatim

against other property and persons liable, before obtaining reimbursement for the expenditure of State funds.

Prior to the above enactment, the applicable statute was the Act of June 1, 1915, P. L. 661, which, in section 3 (71 PS §1783) provided as follows:

"The husband, wife, father, mother, child or children of any person who is an inmate of any asylum . . . maintained . . . by the Commonwealth of Pennsylvania, who is legally able so to do, shall be liable to pay for the maintenance of any such person . . ."

It can be seen that the Act of 1951 changed this language in two ways; first, by including the patient's real and personal property, and second, in omitting the phrase, "who is legally able so to do." Neither affects the precise issue here, which deals only with the legal question of whether the Commonwealth must proceed first against immediate family members before recovering from more distant ones. In addition, it is manifest that this estate is "legally able" to pay the claim.

It was held, under the language of the Act of 1915, that the order in which the relatives of the incompetent is set forth is of no moment regarding the right of the Commonwealth to be indemnified, as it clearly sufficed to create a liability under the statute that a person therein named was legally able to pay: Stoner Estate, 358 Pa. 252. It has also been held that the Commonwealth's rights against a decedent's estate are not impaired by the fact that no action was taken to enforce the duty of support when the decedent was alive: Stoner Estate, supra; Harnish's Estate, 268 Pa. 128.

The same conclusion was also reached in Commonwealth v. Zommick, 362 Pa. 299. It was held there that the statute was essentially for the protection of the Commonwealth, and imposed a suretyship (and therefore primary) liability on others for the same debt for

which the incompetent is admittedly liable. Although both the Stoner and Zomnick cases construed the language of the Act of 1915, their reasoning applies with equal force to the meaning of the Act of 1951, and it follows, that, regardless of the relative equities between themselves, the parties responsible by law for the support of an incompetent are directly and primarily liable to the Commonwealth.

The residuary legatees have cited Bole's Estate, 316 Pa. 179, in support of their contentions, but the case is inapplicable, as it stands only for the accepted proposition that where an incompetent has sufficient estate to pay for his care, he, and not his relatives, is initially liable. In that case, the court had before it for distribution sufficient funds of the incompetent himself to cover the claim, and accordingly refused to charge the estate generally. The rights of the Commonwealth were not involved as it was sure to be paid in any event, and the real issue dealt with the matter of relative equities between distributees.

The Orphans' Court of Philadelphia County, in Barna Estate, 26 D. & C. 2d 369, recently sustained a claim of the Commonwealth against the estate of the mother of an incompetent, although no prior efforts had been made to recover from the incompetent's husband. Judge Shoyer held that the Commonwealth was not bound by rules of priorities between the parties severally liable for support, and said, at page 372:

"In view of the foregoing the patient's distributive share . . . being less than the Commonwealth's claim, her share will be applied on account thereof, and the balance of the claim will be awarded out of the parent's general estate . . . Decedent's other children whose shares are thereby reduced will be subrogated to that extent as to their rights over against their sister and her missing husband."

I do not now make any determination with respect to subrogation, as that issue is not before me. But it is obvious from the above language that the law imposes the task of determining equities between relatives on those who would benefit from the determination, and not upon the Commonwealth, which is already bearing the burden of the care and support of the incompetent without any certainty, in many cases, of reimbursement. When viewed in this light, the result eminently justifies itself. Accordingly, the claim of the Commonwealth is allowed, and there is awarded to it the sum of $9,956.83, on account of the support of Ronald Rhoads. . . .

And now, March 22, 1963, this adjudication is confirmed nisi.