Albert Lansing and Catherine Lansing, his wife, Appellants v. Commonwealth of Pennsylvania, Department of Public Welfare, Appellee.

Argued December 6, 1979, before Judges CRUMLISH, JR., MENCER and MACPHAIL, sitting as a panel of three.

*Andrew M. Schifino,* for appellants.

*Robert S. Englesberg,* Assistant Attorney General, with him, *Edward G. Biester, Jr.,* Attorney General, for appellee.

OPINION BY JUDGE MENCER, February 11, 1980:

The Commonwealth of Pennsylvania, Department of Public Welfare (DPW) commenced an action in assumpsit against Albert Lansing and Catherine Lansing, his wife (appellants) to recover the cost of maintaining their son, David Lansing, in Mayview State Hospital (Mayview) for various periods of time between January 11, 1972 and January 16, 1974. David Lansing was born on June 14, 1945 and was over 26 years of age when treatment began and over 28 years of age at the time of his last confinement. David was indigent at the time of his admission to Mayview, as well as during his treatment periods and at the time the assumpsit suit was commenced. The amount of the expenses incurred by DPW in maintaining David Lansing at Mayview totaled $3,878.68 and is the sum of money which the assumpsit action seeks to recover.

This case was tried nonjury before the Honorable ROBERT DOYLE, a Judge of the Court of Common Pleas of Allegheny County, following which a verdict was

rendered in favor of the DPW for $3,878.68. On September 22, 1978, judgment on the verdict was entered and this appeal followed. We affirm.

The DPW foundationed its action on provisions of the Mental Health and Mental Retardation Act of 1966 (Mental Health Act), Act of October 20, 1966, Special Sess. No. 3, P.L. 96, *as amended,* 50 P.S. §4101 et seq., and Section 3 of the Act of June 1, 1915, P.L. 661, *as amended* (Act of 1915), 71 P.S. §1783.

Section 502 of the Mental Health Act, 50 P.S. §4502, at the time in question, provided:

Except as provided in section 504 [50 P.S. §4504],[1] whenever any person admitted, com-

---

[1] Section 504 reads:

(a) Whenever any person receives a service or benefit at any facility under this act wholly or in part at public expense, the secretary is hereby authorized and shall have the power, subject to the approval of the Attorney General, to determine the extent of liability imposed under sections 501 or 502, and to abate, modify, compromise or discharge the liability so imposed provided:

(1) He is satisfied that the imposition of such liability would: (i) result in the loss of financial payments or other benefits from any public or private source which a mentally disabled person would receive, would be eligible to receive or which would be expended on his behalf except for such liability, or (ii) result in a substantial hardship upon the mentally disabled person, a person owing a legal duty to support such person or the family of either, or (iii) result in a greater financial burden upon the people of the Commonwealth, or (iv) create such a financial burden upon such mentally disabled person as to nullify the results of care, treatment, service or other benefits afforded to such person under any provision of this act.

(2) Proceedings to recover such costs or discharge such liability including legal fees would not be in the best interest of the Commonwealth.

(b) If the secretary exercises the power conferred in sections 501 or 504(a) with reference to any person upon whom liability is imposed by sections 501 or 502, the department shall reimburse the county to the extent such person

mitted or otherwise receiving any service or benefit under this act shall be unable to discharge the obligation imposed upon him by Section 501 [50 P.S. §4501],[2] such liability is hereby

is relieved of any obligation to pay the county for services or benefits received by him under this act and paid for by the county on his behalf.

(c) The liability of a mentally disabled person or of anyone legally responsible for his support shall be the amount fixed or charged by the secretary and the payment of the amount so fixed or so charged shall relieve such person of all further liability for payment of the maintenance of the mentally disabled person.

(d) In exercising the powers herein conferred, the secretary by regulation, approved by the Governor, shall establish criteria by which the extent of such liability shall be determined except that wherever possible any real estate which constitutes the home residence of the mentally disabled person or his spouse, or a person owing a legal duty to support shall not be considered.

(e) The secretary may call upon the Secretary of Revenue for assistance in establishing said criteria, and in determining the financial ability of any person to discharge liability imposed upon him under this act.

(f) The secretary and the Secretary of Revenue shall jointly promulgate regulations, subject to the approval of the Attorney General, as to the duties of revenue agents and other personnel of each department with reference to the investigation and determination of any person's financial ability as aforesaid.

[2] Section 501 reads:

Whenever public funds are expended under any provision of this act on behalf of a mentally disabled person, the governmental body expending such funds may recover the same from such person subject to the regulations of the department and for this purpose liability is hereby imposed upon such person admitted, committed or otherwise receiving any service or benefit under this act for all costs, payments or expenditures with reference thereto, including but not being limited to the costs of admission or commitment, transportation, treatment, training, maintenance, complete care, partial care or aftercare and discharge.

imposed upon any person owing a legal duty to support the person admitted, committed or otherwise receiving services or benefits under this act. (Footnotes added.)

Section 3 of the Act of 1915, *inter alia,* provides:

The husband, wife, father, mother, child or children of any person who is an inmate of any asylum, hospital, home or other institution, maintained in whole or in part by the Commonwealth of Pennsylvania, and who is legally able so to do, shall be liable to pay for the maintenance of . . . such person. . . .

From this cited law we can readily perceive that the obligation of the patient's relatives under the Act of 1915 is a primary obligation in the nature of a suretyship, *Commonwealth v. Zommick,* 362 Pa. 299, 66 A.2d 237 (1949), and extends to the parent of an incompetent adult child, *Boles's Estate,* 316 Pa. 179, 173 A. 664 (1934). Further, Section 504 of the Mental Health Act provides the Secretary of the DPW with the power to determine the extent of liability imposed under Section 501 or 502 of the Mental Health Act. Here, in accord with the provisions of Section 504 and the regulations promulgated thereunder, the amount of $3,878.68 was fixed by the revenue agent at Mayview on May 27, 1976 as the extent of liability chargeable to Albert Lansing and Catherine Lansing for the maintenance of their son David at Mayview.[3]

However, the appellants assert that before they can be required to pay for David's maintenance they must be found to be "legally able so to do" and that this can only be done by a proceeding brought under The Support Law, Act of June 24, 1937, P.L. 2045, *as*

---

[3] Any question as to the correctness of this amount and the validity of its determination was certainly waived when the parties to this litigation stipulated at trial that $3878.68 was the amount expended by the Commonwealth for David's maintenance.

*amended,* 62 P.S. §1971 et seq., or the Act of 1915. We cannot agree, since Section 701(b) of the Mental Health Act, 50 P.S. §4701(b), repealed, insofar as they are inconsistent, all other acts and parts of acts. We must conclude that this repealer provision included those portions of The Support Law and the Act of 1915 which are inconsistent with the Mental Health Act. Section 504 of the Mental Health Act provides the procedure for determining the extent of liability imposed under Section 501 or 502 of the Mental Health Act. Thus, the determination made here was done in accordance with applicable law.[4]

In addition, the appellants contend that because Section 502 of the Mental Health Act was amended in 1974 to extinguish all liability imposed on persons owing a legal duty to support a person admitted, committed or otherwise receiving any service or benefit under the Mental Health Act, after the mentally disabled person attains the age of eighteen, this amendment to the Mental Health Act should be applied retroactively to include the appellants' liability here.

We note that the amending act, effective October 12, 1974, did not make provision for retroactive application. Further, the Statutory Construction Act of

---

[4] Appellants' reliance on *Commonwealth v. Fleckenstein*, 67 Pa. D. & C. 2d 54 (1974), is misplaced. In that case, the Commonwealth attempted to recover moneys which it expended in maintaining the defendant's husband at Warren State Hospital, and the court dismissed the Commonwealth's complaint because it had not sought relief under the provisions of the Act of 1915. However, that court did not discuss or refer to Section 504 of the Mental Health Act which provides the method for determining that a relative is legally able to pay. This determination is subject to administrative and judicial review. Section 606 of the Mental Health Act, 50 P.S. §4606. Moreover, Section 701(b) of the Mental Health Act, 50 P.S. §4701 (b), repealed all inconsistent acts and parts of acts, which we deem to include the provisions of the Act of 1915 which appellants rely upon in this case.

1972, 1 Pa. C.S. §1501 et seq., *inter alia,* provides : "No statute shall be construed to be retroactive unless clearly and manifestly so intended by the General Assembly." 1 Pa. C.S. §1926.

We, like the trial court, find no indication of any legislative intent to suggest that the 1974 amendment to Section 504 of the Mental Health Act should be retroactively applied. Therefore, we will not give the 1974 amendment such application in this case.

Order affirmed.

### ORDER

AND Now, this 11th day of February, 1980, the order of the Court of Common Pleas of Allegheny County, dated June 13, 1978, dismissing the exceptions of Albert Lansing and Catherine Lansing and ordering the Prothonotary, upon payment of any required fee, to enter judgment in favor of the Commonwealth of Pennsylvania, Department of Public Welfare, and against Albert Lansing and Catherine Lansing, his wife, in the sum of $3,878.68, is hereby affirmed.

Judge DiSALLE did not participate in the decision in this case.